GEORGE A. FULLER COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24491.)

Court of Claims, January 29, 1937.

*Ainsworth & Sullivan* [*Charles B. Sullivan* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin, Jr., Assistant Attorney-General,* of counsel], for the defendant.

MURPHY, J. This claim is one to recover damages for the State's breach of contract in failing to furnish certain facilities for temporary heat for the group of buildings described in the contract during a stated period of construction.

The State moves to dismiss the claim upon the ground that the claim does not state facts sufficient to constitute a cause of action.

The claim describes the contract as one made November 30, 1932, between the State and Seglin Construction Company, Inc., for the construction for continued treatment group, infirmary

building, at Kings Park State Hospital, Kings Park, New York, known as contract No. 2285, project No. 3068, specification No. 7307.

It appears and it is alleged that the buildings to be constructed were additional buildings to those then existing, that they were designed to be heated by steam to be supplied from the institution's then existing plant, and the necessary tunnels and steam supply and return lines to conduct the steam from the then existing plant to the additional buildings formed and became a part of the contract.

It is alleged that within the period November 15, 1934, and May 1, 1935, the contractor was required to furnish temporary heat to the buildings under construction, and the means or method by which such heat should be provided is set forth in the claim as follows:

" 12. The construction contractor shall provide and install temporary boilers outside the buildings with enclosures, chimneys and all necessary piping, fitting and appliances to supply low pressure steam for the temporary heating of the buildings, or he shall obtain steam heat from other sources as hereinafter specified in paragraphs 20 to 26 inclusive."

" 21. If steam for temporary heat is obtained from the institution, the construction contractor shall reimburse the institution with coal (of the kind used by the institution) for the steam used to the value of 80 cents per 1000 lbs. of steam as measured by approved steam flow meters which shall be furnished and installed by the construction contractor, in locations adjacent to the institution's mains all as required and directed."

It is further alleged that prior to November, 1934, permanent steam supply and return lines and service tunnels connecting the buildings under construction with the existing power house and permanent heating plant of the institution with adequate capacity to supply all steam that would be required for the temporary heat to the buildings under construction was available; that in October, 1934, the contractor sought to obtain by purchase and within the contract terms steam for temporary heating from the institution, that the State refused to furnish the steam, and that at great increase in cost to the contractor temporary heat was provided. Due performance of the contract by the contractor is alleged.

The claim does not set forth the contract *in extenso* nor is reference sufficiently made to it so that it might be read as a part of the claim. Upon this proposition the position of the learned Attorney-General is correctly taken. (*Boiardi* v. *Marden, Orth & Hasting*

*Corp.,* 194 App. Div. 307; *Du Pont Auto. Distributors, Inc.,* v. *Du Pont Motors, Inc.,* 213 id. 313.)

The question remains, does the claim, with the facts alleged and the fair and logical inference thai may be drawn from them, state a cause of action.

The claimant seeks to recover the increased cost of furnishing temporary heat to the buildings under construction during a period of their construction when by the terms of the contract temporary heat was required.

The obligation to furnish temporary heat is clearly alleged in the claim and it is alleged as the obligation of the contractor.

Sections 12 and 21 of the specifications are set forth in full in the claim for the obvious purpose of showing the manner and method and the conditions under which such temporary heat would be furnished.

These two sections must be read together, and reading the concluding part of section 12, " or he shall obtain steam heat from other sources as hereinafter specified," with the opening part of section 21, " If steam for temporary heat is obtained from the institution," the inference is compelled that a right to the contractor to obtain steam for temporary heat from the institution was intended and provided.

Furthermore, the part of the section 21 that follows that creates the manner of payment by the contractor in the event that the steam is furnished by the institution can be given one meaning only and that is that the contractor might if he so elected obtain steam for this heating from the State institution. Always, of course, within reasonable limits and within a fair construction of the contract.

For the purposes of this motion every material fact of the claim and every fair and legitimate inference that may be drawn from the facts alleged is deemed admitted. (*Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Dyer* v. *Broadway Central Bank,* 252 id. 430; *Malco Trading Corp.* v. *Mendelson-Silverman, Inc.,* 240 App. Div. 322; affd., 264 N. Y. 651.)

The claim construed accordingly states a cause of action, and the motion of the State to dismiss is denied.

BARRETT, P. J., concurs.